UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 22-215** |
| **WILLIAM LANG** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court are Defendant's Motion to Suppress Evidence (Doc. 318) and the Government's Motion to Quash Rule 17(c) Subpoena (Doc. 339). The Court held a hearing on these motions on November 14, 2024. For the following reasons, Defendant's Motion to Suppress was **DENIED**, and the Government's Motion to Quash was **GRANTED** (Doc. 359).

## BACKGROUND

As a result of an investigation by members of the Drug Enforcement Administration ("DEA"), Defendant William Lang was charged with Conspiracy to Distribute and Possess with Intent to Distribute 5 kilograms or more of cocaine, 1 kilogram or more of heroin, and 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1)(A) and 846. A trial of the charge

1

against Defendant is set for December 2, 2024. Now before the Court are Defendant's Motion to Suppress statements he made after a traffic stop and the Government's Motion to Quash Defendant's request to subpoena recordings of the jail calls of his co-defendant, Charles Wade. The Court previously denied Defendant's motion and granted the Government's motion for the following reasons.

## LAW AND ANALYSIS

### A. Motion to Suppress

Defendant moved to suppress statements given by him after a traffic stop made in connection with the DEA's investigation, attesting by affidavit that he was not read his *Miranda* rights and that he did not give a statement. The Government presented evidence otherwise. As a result, the Court held an evidentiary hearing on November 14, 2024 where it heard testimony from DEA Officer Roberto Murillo and Orleans Parish Sheriff's Office Detective Charles Morgan.[1] The Court heard the following testimony.

On July 15, 2022, DEA officers performed a traffic stop with the assistance of local police in connection with an ongoing drug investigation. Officer Murillo testified that Defendant William Lang, his co-defendant Charles Wade, and another man were in the vehicle involved in the stop. All three men were handcuffed and transported to the Kenner Police Department. Officer Murillo testified that Wade was transported in one vehicle, and the

---

[1] Doc. 358. "[A]n evidentiary hearing is required when the defendant alleges sufficient facts which, if proven, would justify relief." United States v. Mergist, 738 F.2d 645, 648 (5th Cir. 1984) (internal quotations omitted).

2

other men were transported in a separate vehicle. He testified that he was told that Defendant and the other man were read their *Miranda* rights on the side of the road before being brought to the police department. Officer Morgan corroborated this testimony, stating that although he did not recognize Lang or know his name at the time, he remembered the July 15, 2022 traffic stop and remembered reading the *Miranda* rights from a card to two men on the side of the road before they were put into a police vehicle. He testified that they nodded that they understood their rights. He testified that the event was witnessed by other officers nearby. The DEA report prepared after the stop also states that Officer Morgan read Lang his *Miranda* rights.[2]

Once at the Kenner Police Department, Defendant Wade gave inculpatory statements about Lang's involvement in drug trafficking crimes. The officers then allowed Wade to speak to Lang. Officer Murillo testified that after speaking with Wade, Lang agreed to cooperate with the investigation provided that he could return home that evening. According to Officer Murillo, Lang provided information regarding the drug transaction that he and Wade had completed in Houston and the plan to transport the drugs in a vehicle that was scheduled to be towed to New Orleans. Lang assisted the officers in making contact with the tow truck driver and arranging delivery of the vehicle. Officer Murillo testified that they would not have had the information regarding the tow truck driver without Lang's cooperation. In addition, Lang signed a consent to search his cell phone and gave officers the passcode thereto. Both Defendants were released from the police department and asked to meet

---

[2] A different officer read Wade his *Miranda* rights.

at the Lakeside Mall the next day to effectuate the delivery of the vehicle and the drugs stored therein.

The men met officers at the Lakeside Mall the following day, July 16, 2022. Lang paid the tow truck driver for the delivery of the vehicle and the drugs were handed over to the DEA officers. Wade and Lang were permitted to leave.

Under *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[3] "*Miranda* warnings must be administered prior to custodial interrogation."[4] "Once adequate warnings have been given, a suspect may knowingly and intelligently waive his *Miranda* rights and agree to answer questions."[5]

> The inquiry whether a valid waiver has occurred "has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." When the prosecution offers statements made by a defendant during custodial interrogation, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."[6]

---

[3] United States v. Cardenas, 410 F.3d 287, 292 (5th Cir. 2005) (discussing Miranda v. Arizona, 384 U.S. 436 (1966)).
[4] United States v. Lim, 897 F.3d 673, 690 (5th Cir. 2018).
[5] United States v. Cardenas, 410 F.3d 287, 292 (5th Cir. 2005).
[6] United States v. Andrews, 22 F.3d 1328, 1337–38 (5th Cir. 1994) (internal citations omitted).

4

"Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."[7] The Government need "prove waiver only by a preponderance of the evidence."[8]

Here, it is undisputed that Lang was in custody on July 15, and therefore, entitled to receive *Miranda* warnings prior to giving a statement. The Court found the testimony of the officers at the evidentiary hearing to be credible and that the Government met its burden to show that Lang received and understood his *Miranda* rights and implicitly waived those rights when he gave a statement. Defendant offered nothing to call into question the credibility or believability of the officers' testimonies. The Court does not find credible Defendant's assertion that he did not give a statement. The undisputed facts that Defendant signed a consent to search his phone and willingly returned the following day to effectuate the vehicle's delivery support a finding that he was cooperative throughout the process. Given these cooperative acts, "the Court finds it unlikely that he maintained the rigid silence that he now suggests."[9]

Further, the Court found that Lang was not "in custody" on July 16, and thus no *Miranda* warning was warranted. The Fifth Circuit has instructed courts to consider four factors to determine whether a person is "in custody":

(1) whether there was probable cause to arrest the defendant,
(2) whether the investigation was focused on the defendant at the time of interrogation,

---

[7] Berghuis v. Thompkins, 560 U.S. 370, 384 (2010).
[8] Colorado v. Connelly, 479 U.S. 157, 168 (1986).
[9] United States v. Jenkins, No. 03-168, 2003 WL 22244680, at *3 (E.D. La. Sept. 29, 2003).

(3) whether the law enforcement officer had a subjective intent to hold the defendant, and
(4) whether the defendant subjectively believed that her freedom was significantly restricted.
Custody did not require the presence of all factors, but more than one factor had to be present.[10]

Here, Defendant was allowed to voluntarily meet officers at Lakeside Mall to effectuate delivery of the vehicle, was not arrested or detained during that transaction, was not interrogated at that time, and was allowed to leave after the transaction. Accordingly, Defendant was not "in custody" on July 16 for *Miranda* purposes, and any statement made at that time will not be suppressed on those grounds.

### B. Motion to Quash Subpoena

On October 18, 2024, Defendant Lang requested the issuance of a Rule 17(c) subpoena to obtain jail calls of his co-defendant, Charles Wade. Defendant argues that he "reasonably anticipates" that the jailhouse calls will reveal that Wade is "up to no good."[11] In response, the Government filed a Motion to Quash this subpoena, arguing that Defendant has not met the requirements for its issuance.

Federal Rule of Criminal Procedure 17(c) provides that:

A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive,

---

[10] United States v. Bengivenga, 845 F.2d 593, 595 (5th Cir. 1988).
[11] Doc. 350.

    the court may permit the parties and their attorneys to inspect all or part of them.

In order to require production prior to trial, the moving party must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"[12] In short, the party seeking the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."[13]

    Defendant's request lacks any specificity regarding what information he is seeking and to whom Wade might have been speaking. At oral argument, Defendant explained that he is seeking calls between Wade and his family or attorney that might explain why Wade implicated Lang in his factual basis. He relies only on *United States v. Alexander* in support of his request, but that case is easily distinguishable.[14] There, the court allowed the defendant to obtain calls between a witness and a DEA agent that might show what manipulation or undue pressure the agent had put on the witness to repeat false story lines.[15] The existence of such calls was not mere speculation in light of a criminal investigation into the agent that revealed instances of perjured

---

[12] United States v. Nixon, 418 U.S. 683 (1974).
[13] *Id.*
[14] No. CR 15-295, 2016 WL 6473237, at *2 (E.D. La. Nov. 2, 2016).
[15] *Id.*

7

testimony.[16] Defendant's allegation that Wade is generally "up to no good" does not rise to this level of specificity, and he has not offered any evidence supporting his hunch that the calls will reveal relevant, exculpatory evidence. Further, the Supreme Court has explained that, without more, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."[17] Defendant does not provide any other basis for the evidence he seeks except to impeach Wade's testimony. Accordingly, without more, Defendant does not meet the requirements for the issuance of the Rule 17(c) subpoena, and this Court granted the Government's Motion to Quash.

## CONCLUSION

For the foregoing reasons, Defendant's Motion was **DENIED**, and the Government's Motion was **GRANTED**. The Rule 17(c) subpoena issued is **QUASHED** (Doc. 337).

New Orleans, Louisiana this 19th day of December, 2024.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[16] *Id.*
[17] *Nixon*, 418 U.S. at 701.